**ORIGINAL**

AGARD & KAIAMA, LLC
KEONI K. AGARD      #2649
DEXTER K. KAIAMA   #4249
700 Richards St., Ste.805
Honolulu, Hawai'i 96813
Telephone: (808) 545-2922

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 29 2010

at ___ o'clock and __ min ___ M.
SUE BEITIA, CLERK

Attorneys for Plaintiff DAVID VELEZ

UNITED STATES DISTRICT COURT

for the

DISTRICT OF HAWAI'I

| | |
|---|---|
| DAVID VELEZ, <br><br> Plaintiff, <br><br> vs. <br><br> THE BANK OF NEW YORK MELLON, AS TRUSTEE FOR CERTIFICATE HOLDERS, CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2005-HYB10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-HYB 10, SECURITY NATIONAL MORTGAGE CO., and DOES 1 through 20 inclusive, <br><br> Defendants. | CIVIL NO. 10-00015 DAE KSC <br><br> **PLAINTIFF'S FIRST AMENDED COMPLAINT; DEMAND FOR TRIAL BY JURY; SUMMONS** |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

**Parties**

1. Plaintiff DAVID VELEZ, (hereinafter referred to as "Plaintiff"), is an unsophisticated consumer in regards to credit transactions and is domiciled in the State of Hawaii.

2. Upon information and belief, Defendant THE BANK OF NEW YORK MELLON, AS TRUSTEE FOR CERTIFICATE HOLDERS, CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2005-HYB10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES

2005-HYB 10, (hereinafter referred to as Defendant "MELLON"), is a corporation with its principle place of business in the State of New York, and doing business in the State of Hawaii.

3. Upon information and belief, Defendant SECURITY NATIONAL MORTGAGE CO., (hereinafter referred to as Defendant "SECURITY NATIONAL"), is a corporation with its principal place of business in the State of Utah, and is doing business in the State of Hawaii.

4. DOE DEFENDANTS 1 through 20, inclusive, is various individuals, partnerships, associations, corporations, and other entities claiming any legal right, title, estate, lien or interest in the property, as described hereinbelow adverse to Plaintiff's interests. Plaintiff will make a good faith effort to determine the true names and identities of these parties.

5. Plaintiff reserves the right to amend the Complaint to add such parties as their true identities and capacities is ascertained through discovery or otherwise.

**Jurisdiction**

6. Jurisdiction arises under 15 U.S.C. 1601 et.seq., 15 U.S.C. 1605, 1635, 1640, Title 12, Regulation Z, Part 226 et.seq., Title 24 C.F.R., Regulation X, Part 3500. The court also has authority to hear Federal Law. Further, the supplemental jurisdiction of the Court under 28 U.S.C. S 1367 is invoked with claims asserted under H.R.S. Chapters 480 and 481A. Jurisdiction of state claims is proper because the factual matters underlying the federal and state claims is closely related, making disposition of all claims proper and necessary.

**General Background**

7. The complaint is filed and these proceedings is brought under the Truth in Lending Act (hereinafter "TILA"), 15 U.S.C. S1601et seq., to enforce Plaintiff's rescission of the subject loan and to recover actual and statutory damages, reasonable attorneys' fees, and costs of suit by reason of violations of TILA and the implementing regulations the Federal Reserve Board

adopted pursuant thereto, under 12 C.F.R. Part 226 and commonly known as "Regulation Z."

8. The Complaint is also filed and these proceedings is brought under the Real Estate Settlement Procedures Act (hereinafter "RESPA"), 12 U.S.C. S2601 et.seq., to recover actual and statutory damages, costs and reasonable attorneys' fees by reason of Defendants SECURITY NATIONAL, MELLON and/or DOE Defendants violations of that Act.

9. The Complaint also seeks to recover actual and statutory damages, injunctive and other relief, reasonable attorneys' fees, and costs under Hawai'i unfair and deceptive trade practices statutes, Hawaii Revised Statutes, Chapters 480 and 481A, as well as rescission and actual and punitive damages in connection with fraud and other state claims.

10. The Complaint seeks injunctive relief to the extent it is needed in order to avert the likelihood of injury to Plaintiff during the pendency of the action and to preserve the possibility of effective final relief. The an action to permanently enjoin Defendant MELLON and/or DOE Defendants from foreclosing and conducting a foreclosure auction sale of certain real property designated as TMK (2) 3-4-035-038 located at 391 Hanalei Place, Wailuku, Hawai'i, 96793 (hereinafter "Property"). The purported Mortgage and Note for the Property and the actions taken by Defendants SECURITY NATIONAL, MELLON and/or DOE Defendants contain unfair trade practices and predatory lending practices.

11. The action is also asserted as a defense to an action to collect a debt by Defendant MELLON filing for non-judicial foreclosure auction sale of the Property pursuant to Hawai'i Revised Statutes, Chapter 667-5 through 667-10.

12. Plaintiff also seeks recovery for statutory damages for non-disclosure of Plaintiff's right to cancel, non-disclosure of certain Truth in Lending disclosures and Federal violations of numerous consumer rights, together with attorney fees and costs.

**Statement of Facts**

13. On September 1, 2005, Plaintiff had an ownership interest in the property located at TMK (2) 4-6-006-063 located at 391 Hanalei Place, Wailuku, Hawai'i, 96793 (hereinafter "Property"). Plaintiff entered into a loan transaction with Defendant SECURITY NATIONAL to refinance the property. The property is owned by Plaintiff. Said Plaintiff is inexperienced and unsophisticated in matters of mortgage and loan financing.

14. Defendant SECURITY NATIONAL purported to execute a Note dated September 1, 2005, purported executed by Plaintiff. The Note was secured by that certain Mortgage recorded September 14, 2005, in the Bureau of Conveyances, State of Hawaii, Regular Document System Document No.2005-1283896 under purported loan number XXXXXX0949 (hereinafter referred to as "Mortgage and Note").

15. At the time of execution of the loan documents on September 1, 2005, Plaintiff was instructed to sign, but no explanation was given to Plaintiff regarding the loan documents he was told to sign. Rather, Plaintiff was shown where to sign and given no time to read what he was signing before the next document was presented for his execution. There was no notary public present in order to notarize the loan documents.

16. Plaintiff obtained the loan primarily to refinance and to pay off the prior mortgage.

17. In connection with the loan transaction on September 1, 2005, Plaintiff was not provided two copies of the Notice of Right to Cancel and was not given a written document to retain for his own records.

18. In connection with the loan transaction on September 1, 2005, Plaintiff was not given a written "Truth-in-Lending Disclosure Statement" containing the disclosures described in 12 C.F.R. S226.18.

19. Rescission of the loan transaction was requested by Plaintiff. To date, none of the named Defendants herein have returned to Plaintiff any monies paid in connection with Plaintiff's loan transaction or taken any action to terminate the security interest relating to said loan.

20. In connection with the loan transaction on September 1, 2005, without ever discussing the matter, the loan application prepared on behalf of Plaintiff included Plaintiff's stated income as $12,000.00 per month, (far exceeding what Plaintiff's actual income was at the time of $5,000.00 per month) and the loan application was forwarded without Plaintiff's knowledge of the income stated on his behalf, and without anyone verifying his actual income. Defendant SECURITY NATIONAL ratified such conduct and approved the loan without verifying the income of Plaintiff.

21. The acts of Defendants SECURITY NATIONAL, MELLON and/or Defendants Does alleged in the Complaint were performed by their agents, officers, and/or employees within the scope of their actual or apparent authority.

**Count 1: Truth in Lending Act Violations: Loan Rescission and Recoupment**

22. Plaintiff realleges, as if fully set forth herein, each and every allegation in the preceding Paragraphs of the Complaint.

23. At all relevant times, SECURITY NATIONAL was a "creditor" required to comply with TILA and Regulation Z.

24. On or about September 1, 2005, Plaintiff entered into a consumer credit transaction (in which he borrowed $400,000.00 with a 6.375% interest rate, ARM loan at $2,495.48 per month for a 30 year period) within the meaning of TILA, pursuant to 15 U.S.C. S 1602 and 12 C.F.R. S226.2.

25. As part of the described transaction, SECURITY NATIONAL acquired a security interest in the Property, which was and is Plaintiff's property.

26. Plaintiff had the right to rescind the transaction until midnight of the third business day following consummation, delivery of the required rescission notice, of all "material disclosures", whichever occurred last, pursuant to 15 U.S.C. S 1635(a) and 12 C.F.R. S226.23(a)(3).

27. SECURITY NATIONAL failed to deliver to the Plaintiff two copies of the notice of the right to rescind as required by 15 U.S.C. S1635(s) and 12 C.F.R. S226.23(b).

28. Pursuant to 12 C.F.R. S226.17(a), TILA loan disclosures must be made clearly and conspicuously and grouped together.

29. Pursuant to 15 U.S.C. S1635(f) and 12 C.F.R. S226.23(a), the violations alleged in the above paragraphs extended for up to three years after consummation of Plaintiff's right under TILA to rescind the described transaction.

30. Plaintiff has exercised his right to rescind the transaction pursuant to TILA.

31. Pursuant to 15 U.S.C. S 1635(b) and 12 C.F.R. S226.23(d)(1) and (2), when a consumer rescinds a transaction under TILA, the security interest giving rise to the right of rescission becomes void and the consumer is not liable for any amount, including any finance charge, and within 20 days the creditor is required to return any money or property that has been given to anyone in connection with the transaction and must take any action necessary to reflect the termination of the security interest. Therefore, any security interest SECURITY NATIONAL and/or any successor or assignee may have held in the property is connection with the transaction is void.

32. For the above-stated reasons, Plaintiff is entitled to enforcement of his rescission of the transaction.

33. Pursuant to 15 U.S.C. S 1640(a), Plaintiff is entitled to recover reasonable attorneys' fees and costs of the action.

34. Pursuant to 15 U.S.C. S 1640(a) and (e), Plaintiff is also entitled to assert the TILA disclosure violations described herein extended for up to three years after consummation of Plaintiff's right under TILA to rescind the described transaction.

35. Plaintiff has exercised his right to rescind the transaction pursuant to TILA.

36. Pursuant to 15 U.S.C. S 1635(b) and 12 C.F.R. S 226.23(d)(1)(2), when a consumer rescinds a transaction under TILA, the security interest giving right to the right of rescission becomes void and the consumer is not liable for any amount, including any finance charge, and within 20 days the creditor is required to return any money or property that has been given to anyone in connection with the transaction and must take any action necessary to reflect the termination of the security interest. Therefore, any security interest SECURITY NATIONAL and/or any successor or assignee may have held in the property in connection with the transaction is void.

37. For the above-stated reasons, Plaintiff is entitled to enforcement of his rescission of the transaction.

38. Pursuant to 15 U.S.C. S 1640(a), Plaintiff is also entitled to recover reasonable attorneys' fees and costs of the action.

39. Pursuant to 15 U.S.C. S 1640(a) and (e), Plaintiff is also entitled to assert the TILA disclosure violations described herein as a recoupment in the amount of $2,000.00 and is entitled to a credit in that amount with regard to his tender obligation, if any, under TILA. Further, pursuant to 15 U.S.C. S1641(a), Defendant MELLON, as assignee, of the loan transaction is subject to the same claims and defenses that can be asserted against SECURITY NATIONAL,

the original creditor, as the violation(s) cited herein are apparent on the face of the disclosure documents.

**Count II:  Truth in Lending Act Violations: Loan Damages**

40. Plaintiff realleges, as if fully set forth herein, each and every allegation in the preceding Paragraphs of the Complaint.

41. SECURITY NATIONAL's above-stated failure to allow rescission and to return to Plaintiff the money paid in connection with the transaction and to take action necessary to reflect the termination of the security interest violated 15 U.S.C. S 1635(b) and 12 C.F.R. S 226.23(d)(2).

42. Pursuant to 15 U.S.C S 1635(g) and 1640, by reason of the TILA violations described above, Defendant SECURITY NATIONAL and its successors and assignees is liable to Plaintiff for any actual damages sustained by Plaintiff; twice the amount of any finance charge in connection with the transaction, but not less than $200.00 or greater than $2,000.00; and costs of the action and reasonable attorneys' fees.

**Count III:  Real Estate Settlement Procedures Act "RESPA" violations**

43. Plaintiff realleges, as if fully set forth herein, each and every allegation in the preceding Paragraphs of the Complaint.

44. Plaintiff did not receive a signed Good Faith Estimate "GFE", as required by law.

45. Defendant SECURITY NATIONAL failed to provide Plaintiff with a timely GFE in lending disclosure as required by S 3500.7(b) of HUD's Regulation X, Implementing RESPA, 24 C.F.R. 3500.7(b).

46. Pursuant to S 3500.7(b) of HUD's Regulation X, Implementing RESPA, 24 C.F.R. 3500.7(b), Plaintiff is entitled to damages in an amount to be proven at trial.

46a. Excessive closing costs/fees were charged ($12,767) to Plaintiff by Defendant SECURITY NATIONAL at closing and pursuant to 12 U.S.C. §2607 regarding Broker Compensation, Plaintiff is entitled to treble damages for said violation.

**Count IV:  Unfair or Deceptive Acts or Practices (Defendants SECURITY NATIONAL and MELLON)**

47. Plaintiff realleges, as if fully set forth herein, each and every allegation in the preceding Paragraphs of the Complaint.

48. Plaintiff is a "consumer" as that term is defined in H.R.S. S 480-1.

49. The described acts and practices involved "trade and commerce" as that term is used in H.R.S. S 480-2(a).

50. An unfair or deceptive practice, "UDAP" in the conduct of any trade or commerce is unlawful, pursuant to H.R.S. S 480-2(a). Certain deceptive trade practices are also unlawful pursuant to H.R.S. S 481A-3.

51. In connection with the subject loan, SECURITY NATIONAL engaged in UDAP's that violated the H.R.S. cites above, including but not limited to:

    1. Targeting financially unsophisticated and otherwise vulnerable consumers for inappropriate credit products.

    2. Failing to adequately disclose the true costs and risks of the subject loan and its inappropriateness for Plaintiff.

    3. Making a refinance loan that resulted in little net economic benefit to Plaintiff with the primary objective of general fees.

    4. Making the loan based on the value of the collateral, without regard to Plaintiff ability to repay the loan.

    5. Failing to provide Plaintiff with a timely Good Faith Estimate "GFE".

    6. Attempting to deprive Plaintiff of his legal right to cancel the loan.

52. Defendant SECURITY NATIONAL's violations of TILA in connection with the described loan constitute UDAP's in violation of H.R.S § 480-2(a) and/or 481A-3.

53. The conduct described in Paragraphs 51 and 52 caused Plaintiff to suffer injury to his property, including without limitation wrongfully induced payment of money.

54. Defendant SECURITY NATIONAL's described acts and practices offend established public policy and/or were immoral, unethical oppressive unscrupulous, and/or substantially injurious to consumers, and were therefore unfair in violation of H.R.S. § 480-2(a).

55. Defendant SECURITY NATIONAL's described acts and practices involved material representations, omissions or practices that were likely to mislead consumers acting reasonably under the circumstances, and were therefore deceptive in violations of H.R.S. § 480-2(s) and/or 481A-3.

56. Pursuant to H.R.S. § 480-12, a contract or agreement in violation of H.R.S. Chapter 480-12 is void and is not enforceable at law or in equity.

57. Pursuant to H.R.S. § 480-13(b)(1), a consumer who is injured by a UDAP is entitled, for each UDAP, to be awarded a sum not less than $1,000.00 or threefold any damages he or she sustained, whichever sum is the greater, and reasonable attorneys' fees together with costs of suit.

58. Pursuant to H.R.S. § 480-13(b)(2), a consumer who is injured by a UDAP may bring proceedings to enjoin the unlawful practices and be awarded reasonable attorneys' fees together with costs of suit. Further, pursuant to 15 U.S.C. S1641(a), Defendant MELLON, as assignee, of the loan transaction is subject to the same claims and defenses that can be asserted against SECURITY NATIONAL, the original creditor, as the violation(s) cited herein are apparent on the face of the disclosure documents.

**Count V – Fraud- Defendants Security National and Mellon**

71. Plaintiff realleges, as if fully set forth herein, each and every allegation in the preceding Paragraphs of the Complaint.

72. Defendant SECURITY NATIONAL falsely represented the true costs and risks of the described loan and its inappropriateness for Plaintiff.

73. Defendant SECURITY NATIONAL falsely represented the amount of Plaintiff's income and source of income on the loan application it prepared.

74. Defendant SECURITY NATIONAL falsely represented the nature of the documents Plaintiff was told to sign in connection with the loan.

75. Defendant SECURITY NATIONAL made the false representations described herein with knowledge of their falsity.

76. Defendant SECURITY NATIONAL made false representations in contemplation of Plaintiff's reliance upon them.

77. Plaintiff relied upon those false representation and suffered damage as a result of his reliance upon them.

78. Defendant SECURITY NATIONAL acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or its actions constituted willful misconduct or that entire want of care which raises the presumption of a conscious indifference to consequences to Plaintiff.

79. Plaintiff is entitled to judgment against Defendant SECURITY NATIONAL for actual and punitive damages in an amount to be determined at trial. Further, pursuant to 15 U.S.C. S1641(a), Defendant MELLON, as assignee, of the loan transaction is subject to the same claims and defenses that can be asserted against SECURITY NATIONAL, the original creditor, as the

violation(s) cited herein are apparent on the face of the disclosure documents.

**Count VI: Civil Conspiracy**

80. Plaintiff realleges, as if fully set forth herein, each and every allegation in the preceding Paragraphs of the Complaint.

81. Defendants SECURITY NATIONAL, MELLON and/or Defendant DOES entered into an agreement to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means, in connection with the described loan.

82. As set forth above, Plaintiff's Complaint sets forth actionable claims based on fraud, which was accomplished through the above-described agreement.

83. Defendants SECURITY NATIONAL, MELLON and/or Defendant DOES engaged in overt acts pursuant to and in furtherance of the described agreement, including but not limited to making the false representations set forth in Count VI above.

84. Plaintiff has suffered injury as the proximate result of the unlawful overt acts performed by Defendants SECURITY NATIONAL, MELLON and/or Defendant DOES.

**Count VII: Aiding and Abetting**

85. Plaintiff realleges, as if fully set forth herein, each and every allegation in the preceding Paragraphs of the Complaint.

86. As described above, Defendants SECURITY NATIONAL, MELLON and/or Defendant DOES engaged in wrongful acts which caused injury to Plaintiff.

87. Defendants SECURITY NATIONAL, MELLON and/or Defendant DOES aided each other in wrongful acts that engage those wrongful acts.

88. Said Defendants knowingly gave substantial assistance to the Defendants that engaged in the wrongful conduct.

89. At the time of providing the assistance, said Defendants were generally aware of their role as part of an overall tortious activity.

**Count VIII: Injunctive Relief – Lack of Standing**

90. Plaintiff realleges, as if fully set forth herein, each and every allegation in the preceding Paragraphs of the Complaint.

91. This an action for emergency and permanent injunctive relief seeking to restrain Defendants MELLON and/or Defendant DOES from seeking a non-judicial sale upon the subject property during the pendency of the action. Unless restrained, Defendants MELLON and/or Defendant DOES may convey the property or cause the property to be sold. Such a sale would be to Plaintiff's great and irreparable injury for which pecuniary compensation would not afford adequate relief. The result would be to ultimately remove the Plaintiff from his home without satisfying the necessary legal standing requirements.

92. A Mortgage may only be enforced by a person legally entitled to foreclose on the debt. A Mortgage cannot be foreclosed on behalf of the alleged owner and holder of the note who does not actually own or hold the Note. Defendants MELLO and/or Defendant DOES are not the real party in interest and are not authorized to bring a foreclosure against Plaintiff herein.

93. Standing requires that the party prosecuting the action have sufficient stake in the outcome and that the party bring the claim be recognized in the law as being a real party in interest.

94. Plaintiff has no adequate remedy at law to redress the harm complained of, and the sale of Plaintiff's property is contrary to equity and good conscience in that such sale has been instituted by parties who have no legal standing to institute or maintain the foreclosure.

95. Plaintiff has no other plain, speedy or adequate remedy, and the injunctive relief

prayed for is necessary and appropriate at the time to prevent irreparable loss to Plaintiff. Plaintiff has suffered and will continue to suffer in the future, unless Defendants MELLON and/or Defendant DOES wrongful conduct is restrained and enjoined, because real property is inherently unique and it will be impossible for Plaintiff to determine the precise amount of damage Plaintiff will suffer.

96. Because Defendants MELLON and/or Defendant DOES have no legal standing to institute or maintain a foreclosure, there is no harm to said Defendants with the granting of the requested relief, and any claimed harm is substantially outweighed by the irreparable harm (loss of their home forever) to the Plaintiff if the relief requested herein is not granted.

99. The granting of the relief requested is in the public interest, as the consuming public, including Plaintiff, will continue to be harmed by the illegal and unlawful conduct of Defendants MELLON and/or Defendant DOES if the relief requested is not granted.

100. With said Defendants having no standing, no bond should be required as a prerequisite, as there is no costs or other damages which could be contemplated with the granting of the requested relief for which a bond would otherwise be necessary.

**Count IX: Improper Restrictions Resulting from Securitization Leaves Note and Mortgage Unenforceable**

101. Plaintiff realleges, as if fully set forth herein, each and every allegation in the preceding Paragraphs of the Complaint.

102. The Mortgage is a security agreement between the creditor and debtor to secure repayment of the loan by encumbering collateral for the creditor's benefit. The security agreement may not be modified or amended by one party without the prior written consent of the other.

103. The Servicing and Pooling Agreement "Pooling Agreement" which is the organic document creating mortgage backed securities with Defendant MELLON as Trustee and Defendant Bank of America (not a party herein) as servicer, changes the terms and conditions of Plaintiff's mortgage. The changes are made unilaterally by a transferee holder of the mortgage as a successor in interest to the original creditor named in the mortgage.

104. The transferee holder creates the Pooling Agreement, organizes the securitization by issuing securities (asset backed certificates) collateralized by the mortgage pool under the Pooling Agreement and appoints the parties to manage the securitization and to control the mortgage pool. The Pooling Agreement imposes additional rules and restrictions upon the mortgage and note. These changes as well as others were made without the consent of the Plaintiff herein.

105. When Plaintiff executed the Mortgage, as mortgagor, Plaintiff was neither obligated to agree to an alternate dispute resolution in the event of a default nor restricted from entering into an alternate dispute resolution. When signing the Mortgage, the Plaintiff neither knew nor had any reason to know that a successor in interest to Defendant SECURITY NATIONAL would later impair transferability of the Mortgage or impose new rules and restrictions upon modification of the Mortgage. Failure to abide by the rules and restrictions imposes liability upon the parties who organized, managed and control the securitization.

106. Upon information and belief, the Pooling Agreement creates restrictions upon modification of the promissory Note by:

    a. Imposing restrictions to modification required to avoid double taxation and make collection of payments by the trust and payment to the investors a single pass through taxable event.
    b. Imposing restrictions upon the number of Mortgages in the pool which may be modified.

 c. Providing a procedure for foreclosure but no procedure to modify the loan as an alternate dispute resolution.
 d. Creating securities with classes of ownership "tranches" with adverse and opposing financial interests resulting in so called "tranche warfare" so that a modification which favors one trench may work a detriment upon another thereby creating liability for the managing parties.
 e. Restricting the ability to lower interest payments on the Note.
 f. Restricting the ability to increase the number of payments to be made.
 g. Restricting the ability to defer payments.
 h. Restricting the ability to extend the term of the Mortgage.
 i. Restricting the ability to impose a temporary moratorium on payments.
 j. Restricting the ability to accept "short sales" or reduce the principal amount of the debt.

 107. Such improper restrictions resulting from securitization leaves the Note and Mortgage unenforceable.

 108. Plaintiff, as mortgagor, was neither informed of nor asked to consent by any of the named Defendants herein to the securitization of the Mortgage. Such consent is required for changes pursuant to the terms of the original Mortgage. Control of the mortgage was conveyed to a group of managers who adopted a new set of rules to the terms and conditions of the Mortgage, without the consent of Plaintiff.

**Count X- Wrongful Conversion of Note- Mortgagor Never Consented to Securitization**

 108. The securitization is a conversion of the Mortgage rendering it null, void and unenforceable. The consent required for changes to the Mortgage does not entail the right to convert the Mortgage into a security.

 109. The parties who manage the securitization, including Defendant MELLON as Trustee and Bank of America (not a party herein) as servicing agent of a pass through trust have NO legal or equitable interest in the securitized Mortgage, and said Defendants have provided no evidence whatsoever to support that they have any legal or equitable interest in same.

 110. The securitization divides those who are at a financial risk of loss (the investors or

certificate holders) from a default upon the Mortgage from those who control and have decision-making authority over the Mortgage. When the managers decide to foreclose, it is the certificate holders who bear the loss. However, when and how the managers decide to foreclose, it is accomplished without the knowledge, consent or authority of the certificate holders.

111. Foreclosure avoids litigation from disgruntled certificate holders who could claim a Mortgage modification improperly results in a financial loss. By separating the incidence of loss from the authority to foreclose, the original Note has been altered resulting in a change to the Mortgage, without the Mortgagor's consent and Plaintiff did not give his consent herein.

112. The conversion of the Mortgage to Mortgage backed securities improperly attempts to divide the Note from the Mortgage to make the Note a separately enforceable interest. However, a Mortgage cannot be foreclosed as a separate interest in the property to be foreclosed apart from and independent of the Note.

113. Neither Defendant MELLON or Defendant DOES have any authority whatsoever to foreclose upon the property herein.

**Fraudulent Concealment- Tolling of Statute**

114. Defendants SECURITY NATIONAL, MELLON and/or Defendant DOES fraudulently misrepresented the terms of Plaintiff's loan and mortgage pursuant to allegations contained within Counts IV, V, VI and VII above and Plaintiff hereby realleges, as if fully set forth herein, each and every allegation of Count IV, V, VI and VII.

115. Based on fraudulent concealment of the terms of Plaintiff's loan, the Honorable court can evaluate claims of fraudulent concealment for equitable tolling purposes by extending the time for which Plaintiff may bring rescission or claims against the Defendants named herein. Further, based on the allegations set forth herein via Counts IV, V, VI and Count VII, Plaintiff

has pled sufficient facts to invoke equitable tolling of TILA.

**Prayer**

    a. As to Count I, 1) Declare that Plaintiff has rescinded the loan transaction pursuant to TILA, that the loan agreement is void and unenforceable, that any security interest created is void, and that Plaintiff has no further obligation of payment in connection with the loan transaction; 2) Order the return to Plaintiff of any money or property given by Plaintiff to any of the Defendants in connection with the loan; 3) Order Defendant(s) to take all necessary actions to reflect the termination of any security interest in the property including but not limited to causing satisfaction documents to be filed and recorded with the Bureau of Conveyances, State of Hawai'i regarding the security instruments executed in connection with the loan; 4) Enjoin all Defendants during the pending of the action, and permanently thereafter, from recording any deed or mortgage regarding the property or from otherwise taking any action to deprive Plaintiff of ownership or possession of the Property; and 5) Declare Plaintiff is entitled to an offset for all money given to anyone in connection with the loan as well as a recoupment in the amount of at least $4,000.00, or an amount to be determined at trial.

    b. As to Count II, 1) Award Plaintiff actual damages as will be proved at trial, and 2) Award Plaintiff statutory damages of $4,000.00.

    c. As to Count III, 1) Award Plaintiff for RESPA violations pursuant to applicable law.

    d. As to Count IV, 1) Declare that each contract or agreement relating to the loan transaction is void and unenforceable at law or in equity pursuant to H.R.S. S 480-12 and order the relief described in Paragraphs above; 2) for each UDAP engaged in by Defendant SECURITY NATIONAL, award Plaintiff statutory damages of not less than $1,000.00 or three times the

damages Plaintiff sustained, whichever is greater; and 3) Enjoin Defendant SECURITY NATIONAL from engaging in acts or practices that violate H.R.S. S 480-2 and/or 481A-3.

e. As to Counts V, VI and VII, 1) Declare that the loan transaction is void and order the relief described therein, and 2) Award Plaintiff actual and punitive damages in an amount to be determined at trial.

f. As to Count VIII, 1) Grant injunctive relief to Plaintiff by enjoining Defendant MELLON or any other Defendant herein from selling or foreclosing on the subject property, 2) Bar any attempt by Defendant MELLON or any other Defendant herein to bring a foreclosure action against Plaintiff for lack of standing.

g. As to Count IX, Order that improper restrictions resulting from securitization leaves both the Note and Mortgage unenforceable by any of the named Defendants herein.

h. As to Count X, 1) Order that the conversion of the Mortgage to Mortgage backed securities improperly attempts to divide the Note from the Mortgage to make the Note a separately enforceable interest., and 2) Order that Mortgage cannot be foreclosed as a separate interest in the property to be foreclosed apart from and independent of the Note.

i. Determine that equitable tolling is applicable herein.

j. Grant such other relief that may be appropriate herein.

DATED: Honolulu, Hawaii, June 29, 2010.

*/s/ Keoni K. Agard*
KEONI K. AGARD
DEXTER K. KAIAMA
Attorneys for Plaintiff